Jean E. Williams
Acting Assistant Attorney General
Environment & Natural Resources Division
PAUL G. FREEBORNE
Natural Resources Section
Trial Attorney
PO Box 7611
Washington, DC 20044-7611
Tel: (202) 532-5271
Fax: (202) 305-0506
paul.freeborne@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST CENTER FOR ALTERNATIVES TO PESTICIDES, WILLAMETTE RIVERKEEPER, CASCADIA WILDLANDS, NIEGHBORS FOR CLEAN AIR, AND 350PDX<br><br>Plaintiffs,<br><br>v.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, a federal agency; ALEJANDRO MAYORKAS, in his capacity as Secretary, U.S.DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Case No. 3:20-cv-01816-IM<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) [ECF No. 30]** |

TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ....................................................................................................... 2

I.    Because Plaintiffs Fail to Challenge "Agency Action" or Reviewable "Final Agency  Action," the Court Lacks APA Subject-Matter Jurisdiction to Proceed ............................................................................................. 2

    A.    Neither Section 5 of the Executive Order Nor "Operation Diligent Valor" is a Reviewable "Agency Action" or "Final Agency Action" Authorizing the RCAs in Portland ............................................... 2

        1.    Neither Section 5 of the Executive Order Nor "Operation Diligent Valor" Authorized the Use of RCAs Challenged by Plaintiffs ..................................................................... 2

        2.    Neither Section 5 of the Executive Order Nor "Operation Diligent Valor" is Reviewable under the APA .............................. 6

    B.    Because DHS's Use of RCAs is Neither "Agency Action," Nor Reviewable "Final Agency Action," Rule 12(b)(1) Dismissal is Required ........................................................................................... 8

        1.    Plaintiffs fail to identify "agency action" ....................................... 9

        2.    Plaintiffs also fail to identify "final agency action" ..................... 10

        3.    Section 706(1) ("failure to act") of the APA does not apply here ........................................................................................... 11

II.    The Court Can Now Also Dismiss this Action as Moot under Rule 12(b)(1) ...... 12

III.    Because Criminal Enforcement Actions are Exempt from NEPA Review, this Action Can Also Be Dismissed on the Merits under Rule 12(b)(6) .............. 13

    A.    The DHS NEPA Implementing Procedures and CEQ Regulations Both Recognize the NEPA Criminal Enforcement Actions Exemption ........................................................................................ 14

    B.    The NEPA Criminal Enforcement Actions Exemption is Broad .............. 15

CONCLUSION ..................................................................................................... 16

TABLE OF AUTHORITIES

**Cases**

*ACLU v. NSA*,
    493 F.3d 644 (6th Cir. 2007) ................................................................. 4

*Andrus v. Sierra Club*,
    442 U.S. 347 (1979) ........................................................................... 13

*Audubon Society of Portland v. Jewell*,
    104 F. Supp. 3d 1099 (D. Or. 2015) ..................................................... 12

*Bennett v. Spear*,
    520 U.S. 154 (1997) ............................................................................. 9

*Bernhardt v. Cnty. of Los Angeles*,
    279 F.3d 862 (9th Cir. 2002) ............................................................... 13

*Blue Ribbon Coal., Inc. v. Mont. Wilderness Ass'n*,
    542 U.S. 917 (2004) ............................................................................. 9

*Faith Int'l Adoptions v. Pompeo*,
    345 F. Supp. 3d 1314 (W.D. Wash. 2018) .............................................. 6

*Forest Serv. Employees for Env't Ethics v. United States Forest Serv.*,
    (*FSEEE*), 397 F. Supp. 2d 1241 (D. Mont. 2005) ................................... 5

*Las Americas Immigrant Advocacy Center v. Trump*,
    475 F. Supp. 3d 1194 (D. Or. 2020) ..................................................... 13

*Lujan v. Nat'l Wildlife Fed'n (NWF)*,
    497 U.S. 871 (1990) .................................................................. 2, 3, 4, 5

*Meyer v. Bush*,
    981 F.2d 1288 (D.C. Cir. 1993) ............................................................. 7

*Navajo Nation v. U.S. Dep't of Interior*,
    819 F.3d 1084 (9th Cir. 2016) ............................................................... 6

*Norton v. Southern Utah Wilderness All.*,
    (*SUWA*), 542 U.S. 55 (2004) ..................................................... 9, 10, 11, 12

*ONRC Action v. Bureau of Land Mgmt.*,
    150 F.3d 1132 (9th Cir. 1998) ............................................................. 11

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank*,
    566 U.S. 639 (2012) ........................................................................... 15

*Rattlesnake Coal. v. EPA*,
    509 F.3d 1095 (9th Cir. 2007) .......................................................... 2, 12

*Rocky Mountain Farmers Union v. Corey*,
    913 F.3d 940 (9th Cir. 2019) .................................................................................... 13

*San Francisco Herring Ass'n v. Dep't of Interior*,
    946 F.3d 564 (9th Cir. 2019) ...................................................................................... 6

*United States Army Corps of Engineers v. Hawkes Co., Inc.*,
    136 S. Ct. 1807 (2016) ................................................................................................ 6

*W. Watersheds Project v. USDA APHIS Wildlife Servs.*,
    No. 1:20-cv-00213-BLW, 2020 WL 7318299 (Dec. 11, 2020 D. Idaho) ................... 6

*Washington v. United States Dep't of Homeland Sec.*,
    No. C19-2043-TSZ, 2020 WL 1819837 (W.D. Wash. Apr. 10, 2020) ...................... 6

*Whitman v. Am. Trucking Associations,
Inc.*, 531 U.S. 457 (2001) ............................................................................................ 6

*Wild Fish Conservancy v. Jewell*,
    730 F.3d 791 (9th Cir. 2013) ...................................................................................... 9

*Wilderness Ass'n v. United States Forest Serv.*,
    314 F.3d 1146 (9th Cir. 2003) .................................................................................... 9

**Statutes**

5 U.S.C. § 551(4) ........................................................................................................... 10

5 U.S.C. § 551(8) ........................................................................................................... 10

5 U.S.C. § 551(10) ......................................................................................................... 10

5 U.S.C. § 551(11) ......................................................................................................... 10

5 U.S.C. § 551(13) ......................................................................................................... 11

5 U.S.C. § 702 .................................................................................................................. 2

5 U.S.C. § 704 .................................................................................................................. 2

40 U.S.C. § 1315 ........................................................................................................ 3, 10

40 U.S.C. § 1315(a) ......................................................................................................... 7

**Rules**

Fed. R. Civ. P. 12(b)(1) ................................................................................................... 1

**Regulations**

40 C.F.R. § 1508.1(q)(1) ................................................................................................ 14

40 C.F.R. § 1508.1(q)(2) ................................................................................................ 15

40 C.F.R. § 1508.18 ....................................................................................................... 14

40 C.F.R. § 1508.18(a) ................................................................................................... 13

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P.
12(b)(1) and (b)(6)

41 C.F.R. § 102-74.380...................................................................................................... 7

41 C.F.R. § 102-74.385...................................................................................................... 7

41 C.F.R. § 102-74.390...................................................................................................... 7

79 Fed. Reg. 70,538-02 (Nov. 26, 2014) ........................................................................ 15

85 Fed. Reg. 40,081 (June 26, 2020) ................................................................................ 2

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P.
12(b)(1) and (b)(6)

## INTRODUCTION

Plaintiffs request that the Court enjoin the Department of Homeland Security (DHS) from using Riot Control Agents (RCAs) to protect federal property and personnel until DHS prepares an Environmental Impact Statement (EIS) for such agents under the National Environmental Policy Act (NEPA).  As explained in Defendant's motion to dismiss, however, DHS's use of RCAs is a routine, day-to-day law enforcement activity that is neither "agency action" under the Administrative Procedure Act (APA) nor reviewable "final agency action" under the APA.

In their opposition brief, Plaintiffs seek to overcome this defect by claiming the now-expired provisions of Section 5 of Executive Order 13,933, as purportedly implemented by "Operation Diligent Valor," constitute reviewable final agency action authorizing the use of RCAs in Portland.  This attempt falls well short of the mark.  Section 5 of the Executive Order did not authorize the use of RCAs, is not itself reviewable, and has expired, in any event. Accordingly, this case must be dismissed for lack of jurisdiction under Rule 12(b)(1).

In the alternative, even if the Court were to reach the merits of Plaintiffs' NEPA challenge, dismissal is still required under Rule 12(b)(6).  The Council on Environmental Quality (CEQ) regulations that implement NEPA make clear that criminal enforcement actions are exempt from "[m]ajor [f]ederal action" that triggers NEPA review, including the obligation to prepare the EIS that Plaintiffs seek to compel for the use of RCAs in their Complaint.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 1

## ARGUMENT

I.    **Because Plaintiffs Fail to Challenge "Agency Action" or Reviewable "Final Agency Action," the Court Lacks APA Subject-Matter Jurisdiction to Proceed**

    A.    **Neither Section 5 of the Executive Order Nor "Operation Diligent Valor" is a Reviewable "Agency Action" or "Final Agency Action" Authorizing the RCAs in Portland**

Because NEPA does not contain its own waiver of sovereign immunity, Plaintiffs must establish a waiver of sovereign immunity under the APA to pursue their NEPA claim. *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1103 (9th Cir. 2007).  For its part, the APA permits review of final agency actions, 5 U.S.C. § 704, only where a party has suffered a "legal wrong *because of* [the challenged] agency action." 5 U.S.C. § 702 (emphasis added).

To proceed under the APA, therefore, Plaintiffs must identify and challenge a "final agency action" that applies to their "situation" and allegedly "harms or threatens to harm." *Lujan v. National Wildlife Fed'n (NWF)*, 497 U.S. 871, 890-91 (1990).  Plaintiffs' Complaint makes clear that the only purported action they challenge is the use of RCAs in Portland by DHS agents, and that the only relief they seek is prospective injunctive relief barring "Defendants and their agents from deploying tear gas and other munitions, unless and until the [NEPA] violations" are "corrected."  Compl. at 25, ECF No. 1 (Prayer for Relief ¶ 2).

        1.    **Neither Section 5 of the Executive Order Nor "Operation Diligent Valor" Authorized the Use of RCAs Challenged by Plaintiffs**

Perhaps recognizing that the decisions of individual DHS officers to deploy RCAs to protect federal personnel and property are not "agency action" under the APA, Plaintiffs now claim that the final agency action they challenge is DHS's implementation of Section 5 of Executive Order No. 13,933, Protecting American Monuments, Memorials and Statues, 85 Fed. Reg. 40,081 (June 26, 2020) ("Exec. Order 13,933" or "the Executive Order"), through

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 2

"Operation Diligent Valor."  Pls.' Resp. to Fed. Defs.' Mot. to Dismiss, ECF No. 35 at 9.  This

approach falls well short of identifying a reviewable final agency action authorizing or directing

the use of RCAs in Portland as required to establish jurisdiction under the APA.

Neither Section 5 of the Executive Order nor Operation Diligent Valor contain any

authorization of, or direction governing, the use of RCAs during law enforcement activities to

protect federal property and personnel in Portland.  Section 5 of the Executive Order merely

recognizes that DHS could provide additional personnel to other federal agencies, "as

appropriate and consistent with applicable law," to "assist" with the protection of Federal

property.  Exec. Order 13,933, 85 Fed. Reg. at 40,083.  And "Operation Diligent Valor" is

simply the "designat[ion]" DHS used to describe the deployment of federal personnel to protect

federal buildings and personnel under the long-standing law enforcement authority set forth in

40 U.S.C. § 1315.  *See* Decl. of Gabriel Russell ¶ 8, ECF No. 30-3 ("Russell Decl.").

To evade this shortcoming, Plaintiffs attempt to redefine the Executive Order and

Operation Diligent Valor as including a decision to authorize use of RCAs in Portland.  *See* ECF

No. 35 at 9 ("Plaintiffs refer to these actions individually and collectively as the implementation

of Operation Diligent Valor.").  The Supreme Court, however, has made clear that the limits of

the APA's "agency action" requirement cannot be evaded simply by challenging a grouping of

routine agency activities.  "Under the terms of the APA, [Plaintiffs] must [instead] direct [their]

attack against some particular 'agency action' that causes it harm."  *NWF*, 497 U.S. at 891.

In *NWF*, plaintiffs sought to challenge the Bureau of Land Management's (BLM) "land

withdrawal review program" under the APA.  *Id*. at 890.  But, like here, that term was not

derived from any "authoritative text," "a single . . . order or regulation, or even to a completed

universe of particular . . . orders and regulations."  *Id*.  The "land withdrawal review program"

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P.
12(b)(1) and (b)(6) – 3

was instead "simply the name by which [the agency] . . . occasionally referred to the continuing (and thus constantly changing) operations of the BLM in reviewing withdrawal revocation applications and the classifications of public lands and developing land use plans." *Id*. The Court, accordingly, rejected plaintiffs' attempt to identify "agency action" based upon the "land withdrawal review program," ruling that a party must instead direct its APA challenge at discrete and particular "agency action" that "causes it harm." *Id*. at 891. Justice Scalia explained that that courts may intervene "in the administration of the laws only when, and to the extent that, a specific 'final agency action' has an actual or immediately threatened effect" on a party. *Id*. at 894.

Other courts have recognized the applicability of these principles in the law enforcement context. For example, in *ACLU v. NSA*, 493 F.3d 644, 678 (6th Cir. 2007), plaintiffs challenged various law enforcement activities, including the NSA's alleged warrantless interception of overseas communications, NSA's alleged failure to comply with the Foreign Intelligence Surveillance Act's ("FISA") warrant requirements, and the NSA's presumed failure to comply with FISA's minimization procedure. 493 F.3d at 678. The Sixth Circuit recognized that none of these alleged law enforcement activities fell within the APA's circumscribed definition of "agency action." *Id*. Plaintiffs attempted, as here, to argue that these non-reviewable law enforcement activities were part of some alleged "agency action" because they occurred under a broader program, the Terrorist Surveillance Program. *Id*. at 678-79. The Sixth Circuit rejected that argument, recognizing that the APA's limitations on review of general law enforcement conduct cannot be transformed into "agency action" by how it is characterized. *Id*. at 679.

These clear APA principles and Supreme Court precedent preclude Plaintiffs from obtaining APA review of DHS's day-to-day law enforcement activities by redefining Section 5

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 4

of the Executive Order or "Operation Diligent Valor" into a final decision authorizing or directing use of RCAs in Portland.  Plaintiffs must identify an "agency action" and reviewable "final agency action" authorizing DHS use of RCAs, not other activity unrelated to their alleged harm.

The authority that Plaintiffs rely upon in their response all involve challenges to discrete "final agency action" tied to a party's alleged harm.  For example, Plaintiffs rely heavily upon the district court's decision in *Forest Service Employees for Environmental Ethics v. United States Forest Service* (*FSEEE*), 397 F. Supp. 2d 1241 (D. Mont. 2005).  *See e.g.*, ECF No. 35 at 23 and 26.  Plaintiffs there challenged the Forest Service's use of chemical fire retardant that they claimed harmed them.  397 F. Supp. 2d at 1244.  Recognizing *NWF*, the court was careful to note that plaintiffs were required to point to discrete agency action tied to their harm in seeking APA review.  *See* 397 F. Supp. 2d at 1249-50 (recognizing that *NWF* prohibits a party from "dub[bing]" agency activity for purposes of "agency action" and "final agency action"; challenge must instead be tied to "particular action that causes [party] harm." (quoting *NWF*, 497 U.S. at 891)).  The court found plaintiffs satisfied that burden by identifying specific guidelines and policies authorizing and directing the use of fire retardants.  *Id*. at 1244-45, 1250.  Indeed, in *FSEEE*, the agency had previously acknowledged a final agency action governing use of fire retardants and prepared a NEPA analysis.  *Id.* at 1246.  Here, in contrast, Plaintiffs fail to identify any "final agency action" tied to the use of RCAs that would permit the exercise of APA jurisdiction.[1]

---

[1]  The other decisions cited by Plaintiffs similarly involve challenges to discrete "final agency action" that allegedly caused harm.  *See United States Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807, 1813 (2016) (APA challenge to Clean Water Act "water of the United

2.      **Neither Section 5 of the Executive Order Nor "Operation Diligent Valor" is a Reviewable under the APA**

But even if Plaintiffs could proceed based upon purported actions that have no bearing on their alleged harm and relief, neither Section 5 of the Executive Order nor what Plaintiffs choose to "refer" to as "Operation Diligent Valor" constitute reviewable agency action under the APA.

Section 5 of the Executive Order merely permitted the agency to "assist" other Federal agencies when necessary to protect Federal property.  Exec. Order 13933, 85 Fed. Reg. at 40083. Such an internal distribution of personnel within the Executive Branch does not constitute either "agency action" or "final agency action" under the APA.  *See e.g.*, *Western Watersheds Project v. USDA APHIS Wildlife Servs.*, No. 1:20-cv-00213-BLW, 2020 WL 7318299, at *4 (Dec. 11, 2020 D. Idaho) (recognizing that intra-governmental distribution of products to Wildlife Services offices for predator control activities was "quintessential day-to-day agency operation," not "agency action" nor "final agency action," because such an internal transfer of products does not determine "how, when, where, or even whether the products will be used.").

---

States" determination that plaintiffs alleged interfered with their business); *Whitman v. Am. Trucking Associations, Inc.*, 531 U.S. 457, 478-79 (2001) (APA challenge brought by trucking industry to EPA's implementation of Clean Air Act requirements that plaintiffs alleged exceeded statutory authorization and affected their economic interests); *San Francisco Herring Ass'n v. Dep't of Interior*, 946 F.3d 564, 582 (9th Cir. 2019) (APA challenge to written enforcement notices issued to fisherman that penalized and prohibited plaintiffs from fishing in the San Francisco Bay); *Navajo Nation v. U.S. Dep't of Interior*, 819 F.3d 1084, 1091 (9th Cir. 2016) (APA challenge brought by Navajo Nation challenging Park Service's legal determination regarding challenged inventory requirements under Native American Graves Protection and Repatriation Act, alleging that Park Service must return (not inventory) remains to them in accordance with various treaties, statutes, and the Fifth Amendment to the Constitution); *Washington v. United States Dep't of Homeland Sec.*, No. C19-2043-TSZ, 2020 WL 1819837, at *3 (W.D. Wash. Apr. 10, 2020) (APA challenge to Immigration and Customs Enforcement directive that the State of Washington contended interfered with constitutional and statutory rights of access to State courts); *Faith Int'l Adoptions v. Pompeo*, 345 F. Supp. 3d 1314, 1320 (W.D. Wash. 2018) (APA challenge to State Department directive regarding accrediting practices that plaintiff contended caused it to lose accreditation).

Indeed, because Section 5 of the Executive Order merely addressed the internal management of law enforcement personnel within the executive branch, it was of "doubtful . . . legal significance" at all.  *See Meyer v. Bush*, 981 F.2d 1288, 1296 n.8 (D.C. Cir. 1993) (recognizing that executive order that is devoted to internal management of executive branch is of doubtful legal significance and not subject to judicial review) (internal citations omitted)).

By its terms, moreover, Section 5 of the Executive Order simply allowed additional deployments to be conducted in accordance with "applicable law."  Exec. Order 13933, 85 Fed. Reg. at 40083.  Existing "applicable law" has long given DHS authority to "protect the buildings, grounds, and property that are owned, occupied, or secured by the Federal Government," 40 U.S.C. § 1315(a), and to use RCAs to "enforce Federal laws and regulations for the protection of persons and property," *id.* § 1315(b)(2)(A).  DHS has thus implemented this statutory authority through regulations authorizing officers and agents to deploy the force necessary, including RCAs, when confronted by:  (1) disorderly conduct for persons "entering in or on Federal property," 41 C.F.R. § 102-74.390; (2) persons "entering in or on Federal property" from improperly disposing of rubbish on property, willfully damaging property, creating a hazard on property, or throwing articles at a building or climbing on any part of a building, 41 C.F.R. § 102-74.380; and (3) when "[p]ersons in and on property" refuse to obey "the lawful direction of federal police officers and other authorized individuals." 41 C.F.R. § 102-74.385.

To be sure, RCAs are only used by DHS law enforcement personnel when necessary and appropriate to the immediate circumstances on the ground, and in a manner that respects First Amendment freedoms.  But those policies are set forth in DHS's use of force and First Amendment policies, *see* ECF Nos. 30-1, and 30-2, respectively, not in Section 5 of the Executive Order or in "the implementation of Operation Diligent Valor."  *See* ECF No. 35 at 9.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 7

Finally, Plaintiffs' suggestion that the term "assist" in Section 5 of the Executive Order "means providing assistance to State and local law enforcement officials who are ordinarily responsible to enforce the law and protect public" properties, *see* ECF No. 35 at 24, is both irrelevant and based on a misreading of that provision.  It is irrelevant because even were it true, it does not speak to DHS's use of RCAs, which is what Plaintiffs challenge.  And, it is based on a misreading of Section 5 of the Executive Order because that provision plainly authorized providing additional assistance to other Federal law enforcement partners, not State and local partners, Exec. Order 13933, 85 Fed. Reg. at 40083, as Plaintiffs suggest in their response.[2]

In sum, the Court should reject Plaintiffs' attempt to invoke APA jurisdiction to review ongoing, routine law enforcement activities by characterizing the Executive Order and "Operation Diligent Valor" as decisions authorizing the agency's use of RCAs in Portland.

## B.    Because DHS's Use of RCAs is Neither "Agency Action," Nor Reviewable "Final Agency Action," Rule 12(b)(1) Dismissal is Required

Dismissal is required.  Plaintiffs are unable to identify any agency activity that meets any of the categories of "agency action" in Section 551(13) of the APA or constitutes "final agency action" that would be reviewable under the two-part test set forth in *Bennett v. Spear*, 520 U.S. 154 (1997).  DHS's use of RCAs in Portland is routine, day-to-day law enforcement activity, not

---

[2]  Plaintiffs' attempt to draw on the "Protecting American Communities Task Force" ("PACT"), *see* ECF No. 35 at 25-26, as somehow relating to their challenge to DHS use of RCAs, equally fails.  That Task Force was established to generally "coordinate [DHS] law enforcement agency assets in protecting [the] nation's historic monuments, statues, and federal facilities." *See* Press Release, Dep't of Homeland Sec. DHS Announces New Task Force to Protect American Monuments, Memorials, and Statues (July 1, 2020), https://www.dhs.gov/news/2020/07/01/dhs-announces-new-task-force-protect-american-monuments-memorials-and-statues (last visited on March 11, 2021).  It had no application whatsoever to DHS use of RCAs to protect federal property and personnel, which (again) is what Plaintiffs challenge.  Nor does anything in Section 5 of the Executive Order or "Operation Diligent Valor," address the review of RCAs under NEPA, as Plaintiffs also contend.  *See* ECF No. 35 at 9.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 8

"agency action" or "final agency" action subject to APA review.  *See Wild Fish Conservancy v. Jewell*, 730 F.3d 791, 801-02 (9th Cir. 2013) (recognizing that ongoing operation of dams is not "agency action"); *Mont. Wilderness Ass'n v. United States Forest Serv.*, 314 F.3d 1146, 1150 (9th Cir. 2003), (recognizing that routine trail maintenance is not "agency action" under the APA)**,** *vacated on other grounds*, *Blue Ribbon Coal., Inc. v. Mont. Wilderness Ass'n*, 542 U.S. 917 (2004)

### 1.    Plaintiffs fail to identify "agency action"

"[A]gency action" under the APA must be found among the "five categories of decisions or outcomes implemented by an agency" contained in the definition of "agency action" in Section 551(13) of the APA—an "agency rule, order, license, sanction [or] relief." *Norton v. Southern Utah Wilderness Alliance* (*SUWA*), 542 U.S. 55, 62 (2004) (alteration in original) (quoting 5 U.S.C. § 551(13)).  Plaintiffs do not and cannot identify any "agency action" in any of these categories.

First, Plaintiffs do not and cannot identify any "order" or "rule" regarding DHS's use of RCAs.  An "order" is a "final disposition  . . .  in a matter other than rule making." *SUWA*, 542 U.S. at 62 (alteration in original) (quoting 5 U.S.C. § 551(6)).  A "rule" is an "agency statement . . . of future effect designed to implement, interpret, or prescribe law or policy." *Id*. (quoting 5 U.S.C. § 551(4)).  As explained, neither Section 5 of the Executive Order nor "Operation Diligent Valor" constitute a "final disposition" "implement[ing]" or "prescribe[ing]" anything regarding DHS's use of RCAs.  That authority has long been set forth in 40 U.S.C. § 1315, DHS's implementing regulations, and DHS's use of force and First Amendment policies.

Furthermore, Plaintiffs do not identify any "license" or "sanction" pertaining to DHS's use of RCAs in Portland.  A "license" is a "permit . . . or other form of permission." *Id*.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 9

(alteration in original) (quoting 5 U.S.C. § 551(8)).  A "sanction" is a "prohibition . . . or . . .
taking [of] other compulsory or restrictive action."  *Id.* (alterations in original) (quoting 5 U.S.C.
§ 551(10)).  Again, neither Section 5 of the Executive Order nor "Operation Diligent Valor"
permitted anything new regarding DHS's use of RCAs to protect federal property and personnel.

Plaintiffs, lastly, do not identify any "relief" pertaining to RCAs that would fall under the
definition of that term in 5 U.S.C. § 551(11).  "Relief" includes the "taking of other action on the
application or petition of, and beneficial to, a person."  *SUWA,* 542 U.S. at 62 (citing 5 U.S.C.
§ 551(11)).  Plaintiffs do not reference any action on an application or petition particular to
DHS's use of RCAs.

Plaintiffs, in sum, fail to identify any "agency action" under the APA.

### 2.    Plaintiffs also fail to identify "final agency action"

Plaintiffs similarly fail to identify any reviewable "final agency action" pertaining to
RCAs.  Plaintiffs' various arguments regarding "final agency action" are again based upon
Section 5 of the Executive Order and their misguided "Operation Diligent Valor" theory of APA
jurisdiction.  *See* ECF No. 35 at 25-28.  As explained above at length, that theory does not satisfy
Plaintiffs' threshold burden of identifying "agency action," much less "final agency action."
Neither the Executive Order, nor "Operation Diligent Valor," changed the status quo in any
respect regarding DHS's authority to use RCAs to protect federal property and personnel.
*See ONRC Action v. Bureau of Land Mgmt*., 150 F.3d 1132, 1136 (9th Cir. 1998) (recognizing
that where an agency never entered into decision-making process because it never intended to
change the status quo, it cannot be said to consummate that decision-making for purposes of the
first (and dispositive) prong of the *Bennett v. Spear* test for determining "final agency action.").

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P.
12(b)(1) and (b)(6) – 10

### 3.    Section 706(1) ("failure to act") of the APA does not apply here

Plaintiffs, lastly, cannot stave off dismissal by attempting to proceed under Section 706(1) of the APA, for an alleged "failure to act." *See* ECF No. 35 at 22-23, 25.  To proceed under Section 706(1) Plaintiffs must still identify some "agency action" to compel:  Plaintiffs must point to DHS's failure to "take an *agency action*—that is, a failure to take one of the agency actions" set forth in 5 U.S.C. § 551(13).  *SUWA*, 542 U.S. at 62-63.

A "failure to act" claim is only appropriate, moreover, to challenge "action" (found in 5 U.S.C. § 551(13)) that is "legally *required*."  *Id*. at 63.  A failure to act claim is akin to a request for a mandamus remedy, and can only proceed where there is a "specific, unequivocal command" and when "ordering . . . a precise, definite act . . . about which [an official] has no discretion whatever."  *Id*. (last two alterations in original) (internal citations and quotation marks omitted).  Contrary to Plaintiffs' suggestion, a Section 706(1) claim cannot be based upon an alleged failure to comply with NEPA.  *See* ECF No. 35 at 22-23.  Courts are not empowered to order that agencies comply with broad "statutory mandates" such as NEPA.  *SUWA,* 542 U.S. at 66-67.

Here, as explained, Plaintiffs fail to point to any predicate "agency action" that could form the basis for a "failure to act" claim.  Plaintiffs' argument thus fails as an initial matter under Section 706(1).  It also fails because NEPA does not impose a non-discretionary obligation upon agencies to prepare an EIS—or to undertake any particular form of environmental review.  Plaintiffs cite *Audubon Society of Portland v. Jewell*, 104 F. Supp. 3d 1099 (D. Or. 2015), *see* ECF No. 35 at 22, in purported support of a Section 706(1) claim here.  But there the court ordered that the Department of Interior comply with a specific statutory deadline for the preparation of a comprehensive conservation plan, recognizing that such review is only

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 11

appropriate where there is a non-discretionary duty to act.  104 F. Supp. 3d at 1102-03.  No

similar non-discretionary duty or specific statutory deadline exists here to conduct any review.

 Plaintiffs also suggest that an agency has a non-discretionary duty to prepare an EIS

under NEPA in all circumstances.  *See* ECF No. 35 at 22-23.  But *SUWA*, which specifically

addressed APA review in the NEPA context, makes clear that "Sections 702, 704, and 706(1) all

insist upon [predicate] 'agency action,' either as the action complained of (in §§ 702 and 704) or

as the action to be compelled (in § 706(1))."  542 U.S. at 62.  Because no "agency action" is

presented here, no NEPA obligations are triggered.  Indeed, the CEQ regulations make clear that

"[a]ctivities or decisions that do not result in final agency action under the [APA]," as here, are

not even "[m]ajor [f]ederal action" that trigger NEPA review.  40 C.F.R. § 1508.1(q)(1)(iii).

 Accordingly, the Court should grant Federal Defendants' motion, and dismiss this action,

with prejudice under Rule 12(b)(1), because this Court lacks APA subject-matter jurisdiction to

proceed.  *See Rattlesnake*, 509 F.3d at 1103 (recognizing that court lacks APA jurisdiction to

hear NEPA challenge where party fails to identify "agency action" and "final agency action").

## II. The Court Can Now Also Dismiss this Action as Moot under Rule 12(b)(1)

 Even if the Court were to entertain Plaintiffs' theory of APA liability, however, this

action must be dismissed as moot.  Plaintiffs' entire "Operation Diligent Valor" argument rests

upon the now-expired provisions of Section 5 of the Executive Order.  *See* ECF No. 35 at 9

("Introduction and Background").  Given that Section 5 of the Executive Order terminated six

months after the date of the Order, on December 26, 2020, Exec. Order 13933, 85 Fed. Reg. at

40083, this action is moot.  The Court can and should dismiss this action for this independent

reason under Article III.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P.
12(b)(1) and (b)(6) – 12

Article III jurisdiction depends upon a live "case or controversy." *Las Americas Immigrant Advocacy Center v. Trump*, 475 F. Supp. 3d 1194, 1203 (D. Or. 2020).  Now that Section 5 of the Executive Order has "expire[d]," the action is moot and must be dismissed. *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 949 (9th Cir. 2019).  That is especially so here, where Plaintiffs seek prospective injunctive relief.  "Where there is nothing left of a challenged law to enjoin or declare illegal, further judicial action would necessarily be advisory and in violation of the limitations of Article III."  *Rocky Mountain Farmers Union*, 913 F.3d at 949; *see also Bernhardt v. Cnty. of Los Angeles*, 279 F.3d 862, 871 (9th Cir. 2002) (same).[3]

## III.   Because Criminal Enforcement Actions are Exempt from NEPA Review, this Action Can Also Be Dismissed on the Merits under Rule 12(b)(6)

Finally, even if Plaintiffs could overcome the jurisdictional hurdles under the APA and Article III, this action can also be dismissed on the merits under Rule 12(b)(6).  CEQ's NEPA regulations—which are "entitled to substantial deference," *Andrus v. Sierra Club*, 442 U.S. 347, 358 (1979)—specifically exempt agency activity and decision-making undertaken in connection with "criminal enforcement actions" from the definition of "[m]ajor [f]ederal action" that triggers NEPA review.  40 C.F.R. § 1508.1(q)(1)(iv) (formerly found at 40 C.F.R. § 1508.18(a)) ("NEPA's criminal enforcement actions exemption").  Because neither DHS's use of law enforcement tools such as RCAs nor criminal enforcement actions, generally, are subject to NEPA review, Plaintiffs' NEPA claim also fails as a matter of law on the merits.

---

[3]  Federal Defendants have also requested that this action be dismissed under Article III because of lack of standing.  *See* ECF No. 30 at 21-28.  Given that Plaintiffs so clearly fail to identify any "agency action" or "final agency action" necessary for APA jurisdiction, and rely upon the now-expired provisions of Section 5 of the Executive Order, the Court need not also reach standing, and can and should dismiss this action, with prejudice, under the APA or for mootness.

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 13

**A.    The DHS NEPA Implementing Procedures and CEQ Regulations Both Recognize the NEPA Criminal Enforcement Actions Exemption**

Contrary to the arguments presented in Plaintiffs' response, both DHS's NEPA implementing procedures, set forth in DHS Instruction Manual 023-01-001-01, Revision 01, *Implementation of the National Environmental Policy Act* ("Instruction Manual"),[4] and the CEQ's NEPA implementing regulations, recognize the express exemption for criminal enforcement actions from the definition of "[m]ajor [f]ederal action." *See* ECF No. 35 at 31-33. That exemption is set forth in 40 C.F.R. § 1508.1(q)(1), and was formerly found at 40 C.F.R. § 1508.18(a). When the Instruction Manual was last revised in November 2014, DHS adopted the same definition of "[m]ajor [f]ederal action" that was then set forth in the CEQ regulations at 40 C.F.R. § 1508.18. *See* Instruction Manual at II-4 (defining "[m]ajor [f]ederal action" to be those actions "defined in 40 C.F.R. § 1508.18").

The Instruction Manual's definition of "[m]ajor [f]ederal action" thus fully conforms with the CEQ's definition of "[m]ajor [f]ederal action" and incorporates the criminal enforcement actions exemption. Indeed, the CEQ issued a letter to DHS, on November 10, 2014, prior to the publication of DHS's procedures in the Instruction Manual, advising DHS that the NEPA procedures set forth in its Instruction Manual "conform to NEPA and the CEQ regulations." Environmental Planning and Historic Preservation Program, 79 Fed. Reg. 70,538-02, 70,539 (Nov. 26, 2014). Plaintiffs' repeated arguments that the Instruction Manual somehow incorporates a "broad[er]" definition of "[m]ajor [f]ederal action" than the CEQ regulations,

---

[4] Available at https://www.dhs.gov/sites/default/files/publications/DHS_Instruction%20Manual%20023-01-001-01%20Rev%2001_508compliantversion.pdf (last visited March 11, 2021).

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 14

*see* ECF No. 35 at 32, is refuted by the clear language of the CEQ regulations, the Instruction Manual, and this regulatory history.

That the CEQ regulations deem certain general categories of activity as "[m]ajor [f]ederal action," *see* ECF No. 35 at 31 (citing 40 C.F.R. § 1508.1(q)(2)), does not wipe away the more specific exemption applicable to criminal enforcement actions.  First, it is a basic rule of statutory and regulatory interpretation that more specific regulatory provisions, like the NEPA criminal enforcement actions exemption, control more general provisions.  *See e.g.*, *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (recognizing "commonplace" rule of construction that "specific governs the general." (internal citation omitted)).  Second, the CEQ regulations only recognize that certain agency activity "may" constitute "[m]ajor [f]ederal action." *See e.g.*, 40 C.F.R. § 1508.1(q)(2).  Those provisions must yield to specific exemptions, like the criminal enforcement actions exemption, that are not "[m]ajor [f]ederal action" triggering review.  And lastly, simply because the Instruction Manual has procedures for certain categorical exclusions, emergency actions, and environmental assessments, *see* ECF No. 35 at 32, does not mean that all DHS activity is subject to NEPA.  The Instruction Manual makes clear it is only when agency activity is not otherwise exempt (such as in a criminal enforcement action), that these procedures come into play under NEPA.  *See* Instruction Manual, at V-3.

### B.    The NEPA Criminal Enforcement Actions Exemption is Broad

Finally, Plaintiffs concede that the criminal enforcement actions exemption applies to "longstanding enforcement actions," but contend that the exemption does not apply to "new ones." *See* ECF No. 35 at 34.  As explained, DHS's use of RCAs is both longstanding, and routine.  But even if that were not the case, nothing in the criminal enforcement actions

FEDERAL DEFENDANTS' REPLY IN SUPPORT OF DISMISSAL UNDER FED. R. CIV. P. 12(b)(1) and (b)(6) – 15

exemption suggests that it is somehow limited to longstanding enforcement actions, as Plaintiffs

contend.

Rule 12(b)(6) dismissal is thus required.  Plaintiffs' NEPA claim fails as a matter of law.

## **CONCLUSION**

For the foregoing reasons, this action should be dismissed, with prejudice, under Rule

12(b)(1) and (b)(6).

Dated:  March 15, 2021

Jean E. Williams
Acting Assistant Attorney General
Environment & Natural Resources Division


*/s/  Paul G. Freeborne*
PAUL G. FREEBORNE
Natural Resources Section
Trial Attorney
PO Box 7611
Washington, DC 20044-7611
Tel: (202) 532-5271
Fax: (202) 305-0506
paul.freeborne@usdoj.gov