**Jeffrey M. Edelson, OSB # 880407**
JeffEdelson@MarkowitzHerbold.com
**Nathan D. Burcham, OSB #182509**
NathanBurcham@markowitzherbold.com
MARKOWITZ HERBOLD PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Tel:  (503) 295-3085
Fax:  (503) 323-9105

**Kelly K. Simon, OSB # 154213**
ksimon@aclu-or.org
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION OF OREGON
PO Box 40585
Portland, OR  97240
Tel:  (503) 227-6928

**Nicholas S. Cady, OSB # 113463**
nick@cascwild.org
CASCADIA WILDLANDS
PO Box 10455
Eugene, OR  97440
Tel:  (541) 434-1463
Fax:  (541) 434-6494

**Elisabeth Holmes, OSB # 120254**
eli@willametteriverkeeper.org
WILLAMETTE RIVERKEEPER
PO Box 293
Eugene, OR  97440
Tel:  (541) 870-7722

   Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF OREGON
PORTLAND DIVISION

| | |
|---|---|
| NORTHWEST CENTER FOR ALTERNATIVES TO PESTICIDES, WILLAMETTE RIVERKEEPER, CASCADIA WILDLANDS, NEIGHBORS FOR CLEAN AIR, AND 350PDX,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY; ALEJANDRO MAYORKAS, in his capacity as Secretary, U.S. Department of Homeland Security,<br><br>Defendants. | No. 3:20-cv-01816-IM<br><br>**SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS** |

Page 1 -SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS

## INTRODUCTION

Neither a new President, a new name for the deployment, nor the expiration of Executive Order 13933 renders this case moot. That is because this is a NEPA case, a case about a procedure that Defendants were required to follow and did not follow. This is a case about how Portland found itself under an indiscriminate federal barrage of harmful munitions without the federal government ever considering the risks to the environment or human health. Portland still finds itself subject to indiscriminate use of tear gas and other munitions, federal personnel remain deployed and present, and Plaintiffs' rights to have the impacts of these chemicals on their health and their environment persists under NEPA.

Defendants originally moved to dismiss Plaintiffs' claims under Fed. R. Civ. Pr. 12(b)(1) and 12(b)(6) for lack of standing and failure to allege viable claims. *See* Dkt. 30 at 11 ("Because Plaintiffs lack Article III standing, fail to allege a 'final agency action' that is subject to review under the APA, or otherwise present a cognizable theory of liability under NEPA, Federal Defendants assert this action must be dismissed under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6)."). The Motion to Dismiss did not include any legal argument concerning mootness. Defendants' Reply in Support of Dismissal includes two paragraphs that argue, for the first time, that the action "must be dismissed as moot" because "Plaintiffs' entire 'Operation Diligent Valor' argument rests upon the now-expired provisions of Section 5 of the Executive Order." (Dkt. 47 at 12-13.) Defendants' characterization of Plaintiffs' arguments and legal analysis are both incorrect.

/ /

/ /

/ /

# ARGUMENT

**I.     Defendants cannot raise new arguments for the first time in a reply brief.**

Defendants' attempt to shoe-horn this new argument into their reply brief as a response to Plaintiffs' purportedly expanded argument must fail because it is improperly raised in the reply instead of their Motion to Dismiss. *See, e.g. State of Nevada v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) ("[Parties] cannot raise a new issue for the first time in their reply briefs."); *Cedano-Viera v. Ashcroft*, 324 F.3d 1062 n.5 (9th Cir. 2003) ("[W]e decline to consider new issues raised for the first time in a reply brief."); *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999). In Plaintiffs' Response to Defendants' Motion to Dismiss (Dkt. 35), just as in Plaintiffs' Complaint, Plaintiffs describe Operation Diligent Valor as being implemented "in response to" the Executive Order. Defendants failed to raise this issue in their Motion to Dismiss, so the court should not consider it.

**II.    Defendants mischaracterize Plaintiffs' arguments.**

Officer Derek Chauvin's killing of George Floyd, Executive Order 13933 ("the Executive Order"), and the Donald Trump Administration's desire to quell the protests were catalyzing historical events that provide context for Defendants' implementation of Operation Diligent Valor; however, Plaintiffs do not allege that Officer Chauvin or former President Trump failed to comply with NEPA. Plaintiffs do not challenge the Executive Order at all. Instead, Plaintiffs filed a lawsuit with narrow claims, alleging that the Defendants' implementation of Operation Diligent Valor failed to Comply with NEPA. In planning and initiating Operation Diligent Valor *in response to* the Executive Order, Defendants should have (but failed to) conduct a NEPA analysis that considers actions that "significantly affect the quality of the human environment," and Plaintiffs continue to suffer injuries from Defendants' failures. 42 U.S.C. § 4332(2)(C). The

expiration of the Executive Order carries no import.[1] Defendants claim the Executive Order expired on December 26, 2020 (Dkt. 47 at 12), yet Defendants have used chemical munitions against protesters since that date. Dkt. 35 at 4, 9 (citing Plaintiffs' declarations). The alleged expiration of the Executive Order has not mooted Defendants' use of chemical munitions, nor the NEPA requirements that Defendants have yet to comply with.

In both the Complaint and Response, Plaintiffs consistently describe Defendants' subsequent actions as being "in response to" the invitation in the Executive Order, not "authorized" by that order as Defendants assert. *See* Dkt. 1 ¶ 52; Dkt. 35 at 9; *contra* Dkt. 46-3 (arguing incorrectly that Plaintiffs somehow "expanded" the argument of the Complaint that the Executive Order "authorized" Operation Diligent Valor). Plaintiffs only quickly reference the Executive Order in their 26-page complaint as part of a timeline of events, and in a single introductory sentence of their 39-page Response to Defendants' Motion to Dismiss. Dkt. 1 ¶¶ 50-52; Dkt. 35 at 9. In their Motion to Dismiss, Defendants first argue that Plaintiffs "claim to challenge DHS's decision to deploy federal law enforcement personnel pursuant to 40 U.S.C. § 1315.".[2] Dkt. 30 at 20-23. It is Defendants who have attempted to expand the arguments of their original motion and who continue to distract the court away from the discreet issues before it.

Furthermore, the Executive Order's language sets the Executive Order apart from subsequent law enforcement responses when it makes responsive agency actions conditional upon a request by the agency directors.[3] It is Defendants' *subsequent* actions that Plaintiffs

---

[1] Additionally, Defendants carry the burden of showing mootness, yet they offer the court no evidence that Section 5 of the Executive Order expired as opposed to being extended.
[2] Defendants cite to paragraph 131 of the Complaint for this assertion, yet that paragraph makes no mention of 40 U.S.C. § 1315.
[3] "Upon the request of the Secretary of the Interior, the Secretary of Homeland Security, or the Administrator of General Services, the Secretary of Defense, the Attorney General, and the Secretary of Homeland Security shall provide, as appropriate and consistent with applicable law,

described as the "implementation of Operation Diligent Valor" in Plaintiffs' Response. At no point do Plaintiffs argue that the Executive Order and Operation Diligent Valor are coextensive or that the Executive Order harmed Plaintiffs' interests. The Executive Order *does* make evident that the implementation of Operation Diligent Valor was not a routine law enforcement activity; it also makes evident that Defendants had a choice as to whether to initiate Operation Diligent Valor, that Defendants had six months to respond to the conditional provision in the Executive Order, that Defendants made decisions to respond at the agency level, yet when they took the final action to initiate and implement Operation Diligent Valor, Defendants failed to consider human health and the environment as NEPA requires.

### III. Plaintiffs' case is not moot.

Even if the court considered the issue of mootness, Defendants' arguments still fail. Defendants begin their mootness argument by citing to a standing decision from this court. *See* Dkt. 47-18 (citing *Immigrant Advocacy Center v. Trump*, 475 F.Supp. 3d 1194, 1203 (D. Or. 2020)). Standing and mootness should not be confused. *See Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.*, 528 U.S. 167 at 189-90 (recognizing that understanding mootness only as a standing issue within the context of a time frame "is not comprehensive"). Similarly, Defendants' reliance on *Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940 (9th Cir. 2019) is also misguided.

The Supreme Court's mootness standard is "stringent." *Friends of the Earth,* 528 U.S. 167, 189 (2000). Jurisdiction may only abate upon satisfaction of two conditions: (1) a lack of a

---

personnel to assist with the protection of Federal monuments, memorials, statues, or property. This section shall terminate 6 months from the date of this order unless extended by the President." Executive Order 13933 § 5 (June 26, 2020).

Page 5 -SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS

reasonable expectation that the alleged violation will recur, and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (internal citations omitted); *accord Glaser v. Board of Bar Examiners*, 17 F.3d 394 (9th Cir. 1994) (citing *Davis*). "The burden of demonstrating mootness 'is a heavy one.'" *Davis*, 440 U.S. 625, 631 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632-33 (1953)). Defendants must show that "subsequent events make it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *McCormack v. Herzog,* 788 F.3d 1017, 1024 (9th Cir. 2015) (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Servs., Inc.* 528 U.S. 167, 190 (2000)), or that "the court is no longer capable of 'affect[ing] the rights of litigants." *Id.; see also Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 781 (9th Cir. 2006) (NEPA challenge for failure to prepare an EIS was not moot where law amended after claim arose); *Slockish v. U.S. Federal Highway Admin.*, 682 F.Supp. 2d 1178, (D. Or. 2010) (NEPA challenge to highway widening project not moot even though project completed during litigation). Defendants' cursory argument does not satisfy their heavy burden. In NEPA cases, completion of an action does not render a case moot even if the precise relief sought in an injunction is no longer available. *Oregon Natural Resources Council v. U.S. Bureau of Land Management*, 470 F.3d 818, 820-21 (9th Cir. 2006).

      Plaintiffs' declarations and Defendants' silence make clear that not only is it reasonable to expect that the alleged violations will recur, but the alleged violations actually continue to recur. Here, as in *Glaser*, "[n]o facts indicate that the effects of the alleged violation have been eradicated." 17 F.3d 394 (9th Cir. 1994). Defendants continue to ignore their NEPA obligations and continue to indiscriminately fire chemical munitions in downtown Portland and the South Waterfront. *See, e.g.,* Dkt. 37, Decl. Sharaf; Dkt. 36, Supp. Decl. Simonis. Plaintiffs still suffer

from physical harm, environmental impacts, and a lack of access to information. Unlike Defendants claim in the Reply, relief is not impossible. The Court continues to have jurisdiction and authority to grant the substantive relief Plaintiffs seek. Defendants notably do not argue that they have complied with NEPA or have ceased Operation Diligent Valor in Portland. The only thing that has changed is Defendants' mischaracterization of Plaintiffs' argument between their Motion to Dismiss and their Reply, and the addition of Defendants' mootness argument.

An attempt to twist Plaintiffs' words is especially disingenuous as Defendants concede that legal authority exists for Operation Diligent Valor independent of the Executive Order.[4] Dkt. 46 p.4. *Even if* Plaintiffs had argued that their claims were dependent on the Executive Order, the presence of independent authority for sustaining Operation Diligent Valor is fatal to Defendants' mootness argument. Defendants' argument concedes that expiration of the Executive Order does not legally constrain Defendants from continuing implementation of Operation Diligent Valor as Plaintiffs complain of. The Ninth Circuit has required such restraints. *See Bell v. City of Boise*, 709 F.3d 890, 899-900 (9th Cir. 2013) (case not moot when Defendants' argue their actions were curbed by creation of an internal police policy instead of a formal legislative act, and the police agency head maintained full authority to direct the harmful behavior); *DiLoreto v. Downey Unified Sch. Dist. Bd. Of Educ.*, 196 F.3d 958 (9th Cir. 1999) (adopting the reasoning of *Sefick v. Gardner*, 164 F.3d 370, 372 (7th Cir. 1998), which concluded a changed policy did not moot a case because it was not a change that carried the permanence of statute or regulation). And in NEPA cases, even completion of a project for

---

[4] While other lawsuits have successfully shown that Defendants' actions in Portland under Operation Diligent Valor exceeded their authority under 40 U.S.C. § 1315(a), Plaintiffs take no position on this issue at this time. Plaintiffs reserve the right to challenge Defendants' exercise of this authority should the issue become dispositive in this case.

Page 7 -SUR-REPLY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS

which an agency has failed to comply with NEPA does not moot the case when, as here, the court retains equitable power to order the project removed. *Slockish v. U.S. Federal Highway Admin.*, 682 F.Supp. 2d 1178, 1184 (D. Or. 2010). These types of stringent requirements are exactly what allow courts to be "absolutely clear" that a plaintiff's injuries will not recur for mootness purposes.

  Plaintiffs' interests—physical harm, environmental degradation, lack of access to information—continue to be harmed, and the court retains the power to stop it. Thus, this case is not moot. This rationale makes sense in light of the recognized exceptions to mootness. For example, courts make exceptions when a harm is capable of repetition yet evading review. *See, e.g., Greenpeace Action v. Franklin,* 14 F.3d 1324, 1329 (9th Cir. 1992) (not rendering a case moot even when the court could not grant effective relief because the duration of the challenged action was less than one year and the major issue—effect of pollock fishing—was likely to recur in future years). Courts also make exceptions when defendants voluntarily cease harmful activity. *See, e.g., United States v. W.T. Grant Co.,* 345 U.S. 629, 632 (1953) ("Mere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave the defendant…free to return to his old ways."). If an agency could begin a project without complying with NEPA and just make sure to drag litigation out until the project was expired or completed, agencies could completely circumvent their obligation to consider human health and the environment. *Oregon Natural Resources Council v. BLM*, 470 F.3d at 821 ("[I]f the completion of the action challenged under NEPA is sufficient to render the case nonjusticiable, entities 'could merely ignore the requirements of NEPA, build its structures before a case gets to court, and then hide behind the mootness doctrine. Such a result is not

acceptable.'") (internal citations omitted). The mootness exceptions offer additional rationales for recognizing this case remains live.

Defendants' own arguments and Plaintiffs' declarations make clear that Operation Diligent Valor does not depend on the Executive Order either legally or in practice. Plaintiffs make clear that Defendants continue to injure Plaintiffs with thoughtless deployment of tear gas and other munitions. Plaintiffs have standing to present this live case.

## CONCLUSION

For these additional reasons, the Court should deny Defendants' motion to dismiss.

DATED this 2nd day of April, 2021.

        AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION OF OREGON

    By:   s/Kelly K. Simon

        Kelly K. Simon, OSB # 154213
        ksimon@aclu-or.org
        AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION OF OREGON
        Telephone: (503) 227-6928

        Jeffrey M. Edelson, OSB # 880407
        JeffEdelson@MarkowitzHerbold.com
        Nathan D. Burcham, OSB #182509
        NathanBurcham@markowitzherbold.com
        MARKOWITZ HERBOLD PC
        Telephone: (503) 295-3085

        Nicholas S. Cady, OSB # 113463
        nick@cascwild.org
        CASCADIA WILDLANDS
        Telephone: (541) 434-1463

        Elisabeth Holmes, OSB # 120254
        eli@willametteriverkeeper.org
        WILLAMETTE RIVERKEEPER
        Telephone: (541) 870-7722

        Of Attorneys for Plaintiffs